UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID WILLIAMS,<br>    *Plaintiff*, | :<br>:<br>: | No. 3:22-cv-00236 (KAD) |
| v. | :<br>: | |
| DEPARTMENT OF CORECTION, et al.,<br>    *Defendants*. | :<br>: | JULY 28, 2022 |

**INITIAL REVIEW ORDER**

On February 10, 2022, Plaintiff, David Williams, a prisoner currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought this civil rights action pursuant to 42 U.S.C. § 1983 against the Connecticut Department of Correction ("DOC") and one unnamed DOC correctional officer ("Officer Doe"). Compl., ECF No. 1 at 1, 44–45. Plaintiff seeks unspecified compensatory damages and a restraining order against Officer Doe. Compl. at 47.

On May 12, 2022, this Court dismissed Plaintiff's case without prejudice because of uncured deficiencies identified in his motion to proceed *in forma pauperis*. *See* Order, ECF No. 8. On May 12, 2022, Plaintiff filed an amended complaint which raised claims identical to those in his initial complaint. *Compare* Compl., ECF No. 1 at 46–48 *with* Am. Compl., ECF No. 9 at 7–9. The Court accepts the amended complaint as the operative complaint for purposes of initial review.

On June 14, 2022, the Court reopened Plaintiff's case. *See* Order, ECF No. 13. Shortly thereafter, on June 24, 2022, Magistrate Judge Thomas O. Farrish granted Plaintiff's renewed motion to proceed *in forma pauperis*. *See* Order, ECF No. 18.

For the following reasons, the Court now dismisses Plaintiff's complaint to the extent that it alleges causes of action against the DOC. The Court will, however, permit Plaintiff to move forward with an Eighth Amendment deliberate indifference to safety claim against Officer Doe.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review civil prisoner complaints against governmental actors and "dismiss…any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id*. This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

This Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted). Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or "naked assertion[s]' devoid of 'further factual

2

enhancement,'" does not meet the facial plausibility standard. *Id*. (quoting *Twombly*, 550 U.S. at 55, 57).[1]

**Allegations**

On October 10, 2020, Plaintiff visited an eye doctor in the MacDougall Building of MWCI. ECF No. 9 at 7. Following the appointment, Officer Doe transported Plaintiff back to the DOC facility where he then-resided. *Id*. Officer Doe did not handcuff Plaintiff for transport but did leave Plaintiff shackled at his hands and feet. *Id*. Plaintiff sat in the first row of back seats behind the driver, none of which were equipped with seatbelts. *Id*. Within the van, one of Plaintiff's knees was awkwardly positioned between his seat and a divider which separated inmates from the van's driver. *Id*. at 7–8.

While driving Plaintiff back to his residential unit, Officer Doe kept his cell phone between his legs and continuously texted and/or played games on his cell phone. *Id*. at 8. Suddenly, while texting, Officer Doe "crashed" into a building. *Id*. Plaintiff does not allege how fast Officer Doe was driving at the moment of impact, but he does allege that he suffered injuries which brought on immediate and severe pain. *Id*. Just after the car accident, Officer Doe told Plaintiff that he

---

[1] While it is unclear whether Plaintiff intends to bring any state law claims, the Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to determine whether the lawsuit may proceed in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if viable federal law claims remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, for purposes of an initial review order under 28 U.S.C. § 1915A, the Court's determination that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of that claim. In the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim, a defendant may file a motion to dismiss or motion for summary judgment.

would get him some tee shirts and boxer shorts if he "kept his mouth shut" about what had just happened. *Id*. Plaintiff was not sure how to respond to this, and so stayed quiet. *Id*.

Upon exiting the van, Plaintiff was taken to a communal holding area, where he complained to another unnamed officer about his injuries. *Id*. This officer did not take Plaintiff's complaint seriously, however, and offered no assistance. *Id*. Much later in the day, Plaintiff complained about his injury to correctional officers identified as Ms. Dow and Mr. Hernandez. *Id*. These officers immediately appreciated Plaintiff's need for assistance and called for medical care. *Id*. As of the filing of his initial complaint, Plaintiff continued to experience neck, back, and knee pain which prevented him from walking properly. *Id*. at 9. Plaintiff also contends that the accident has had an adverse effect on his vision and caused overexposure to radiation.[2] *Id*. at 8–9.

Toward the end of his complaint, and based upon the attachments thereto, Plaintiff also alleges that Officer Doe threatened him on November 14, 2020, *id*. at 8, and harassed him for reporting the accident. *Id.* at 34. He alleges that Officer Doe yelled at him for a significant time in a communal holding area and called Plaintiff an "asshole" and vowed that "this isn't going to end well." *Id*. When Plaintiff walked back to his cell, Officer Doe followed him and continued to berate him outside of his cell door for the next ten minutes. *Id*.

**Discussion**

Section 1983 of Title 42 of the U.S. Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally protected rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). In his complaint, Plaintiff does not assert

---

[2] Presumably resulting from CT scans ordered by doctors.

which of his federal rights—constitutional or statutory—he believes were violated. But Plaintiff's factual allegations strongly suggest that he seeks to raise an Eighth Amendment deliberate indifference to safety claim. Taking a more liberal reading of his complaint, Plaintiff may also intend to raise a First Amendment retaliation claim.

*Claims Against the DOC*

To prevail on a § 1983 claim, a plaintiff must establish that his or her federal rights were violated by a "person." 42 U.S.C. § 1983. States, and by extension state agencies, are not "persons" within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). Since DOC is a state agency, it is not subject to liability under § 1983. *Torres v. D.O.C.*, No. 3:20-cv-951 (VLB), 2020 WL 4059827 at *1 (D. Conn. July 20, 2020). Accordingly, all claims against the DOC are dismissed and the Clerk of the Court is directed to terminate the DOC as a party to this case.

In addition, Officer Doe is not a "person" within the meaning of § 1983 to the extent that he acted in his official capacity, and Plaintiff seeks compensatory, rather than injunctive, relief. *Will*, 491 U.S. at 71 n.10. Thus, to the extent Plaintiff seeks compensatory damages, the Court construes Plaintiff's complaint as alleging claims against Officer Doe in his individual capacity.

*Eighth Amendment Deliberate Indifference*

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. CONST. AMEND. VIII. An inmate's Eighth Amendment claim against a prison official is comprised of distinct objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective element of an Eight Amendment claim requires an inmate to show that he or she was deprived of a basic human need. *Id.* at 834. Relevant to this case, "reasonable

5

safety" is a basic human need. *Id*. at 832. The subjective element of an Eighth Amendment claim requires an inmate to show that a prison official acted with a *conscious* disregard to a significant risk to his or her health or safety. *Id.* at 837. This culpable mental state exceeds mere negligence and is akin to criminally reckless intent. *Id*. at 839–40.

Based on the facts alleged, Plaintiff's Eighth Amendment claim is that Officer Doe acted with deliberate indifference to his safety by loading him, shackled, into a van unequipped with seatbelts, and then continuously texting and playing games on his cell phone while driving the defendant to his housing facility, which resulted in the injury-producing crash. This claim is similar, but not identical, to one considered by the Second Circuit in *Jabbar v. Fischer*, 683 F.3d 54 (2012). In *Jabbar*, a prison inmate was shackled at his wrists and ankles and then transported on a bus which was equipped with seatbelts for guards but not prisoners. During transit, the bus suddenly swerved, and the inmate suffered an injury which very likely would not have happened had he been wearing a seatbelt. *Jabbar*, 683 F.3d at 56. Rejecting an Eighth Amendment deliberate indifference claim raised by the inmate-plaintiff, the Second Circuit held that "the failure of prison officials to provide inmates with seatbelts does not, **without more**, violate the Eighth [ ] Amendment[ ]." *Jabbar*, 683 F.3d at 58 (emphasis added). *Jabbar* held that inmate vehicle passengers, as opposed to the general public, do not have a reasonable expectation to the safety afforded by a seatbelt. The court supported this conclusion by noting that inmates could use seatbelts as weapons, and that prison officials thus had a penologically valid reason for depriving inmates of their safety benefits. *Id.* With respect to the subjective element of an Eight Amendment claim, *Jabbar* determined that the risk associated with transporting prisoners in buses unequipped

with seatbelts was not great enough to support a finding that prison officials were deliberately indifferent to inmate safety. *Id.*

*Jabbar* contrasts with an Eighth Circuit Court of Appeals opinion—*Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008). There, a prison official transferred a shackled inmate in a van without first buckling his seatbelt,[3] proceeding to allegedly drive 20 miles per hour above the speed limit, crossing double yellow lines, and passing vehicles in violation of traffic laws. As a direct result of this reckless driving, the unbuckled inmate-passenger was injured in a highway traffic accident. *Id.* at 556. Ultimately, the prison official's refusal to buckle an inmate with an available seatbelt, coupled with his allegedly reckless driving, led the *Brown* Court to conclude that the inmate-plaintiff had a potentially meritorious Eight Amendment claim. *Id.* at 560.

Plaintiff's case is distinguishable from *Brown* in that no one appears to have deprived him of an *available* seatbelt. As ascertained from Plaintiff's complaint, Officer Doe did not have access to a vehicle equipped with inmate seatbelts. But, as in *Brown*, and unlike in *Jabbar*, Plaintiff's Eighth Amendment claim also challenges unsafe driving practices. If Officer Doe's alleged cell phone use rose to the level of criminally reckless conduct, then Plaintiff has a viable Eighth Amendment claim. The fact that Officer Doe knew Plaintiff to be unbuckled during transit is but one factor to consider in assessing his culpable mental state. The singular act of sending a text message while driving could be fairly characterized as criminally reckless. *See New Jersey v. Mansonet*, 2022 WL 774725 (N.J. Super. App. Div. 2022) (unpublished) (reckless vehicular homicide conviction supported by evidence that defendant was sending a text message when she

---

[3] In *Brown*, unlike in *Jabbar* and this case, the transport vehicle was equipped with prisoner seatbelts. The *Brown* inmate allegedly asked to be buckled prior to transport but was mockingly rebuffed. *Brown*, 518 F.3d at 556.

struck a pedestrian); *see also*, *Voisine v. U.S.*, 579 U.S. 686, 707 (Thomas, J., dissenting) (contending that "texting and driving" would constitute criminally reckless conduct). If Officer Doe was, as Plaintiff alleges, engaged in non-stop texting and game play while driving a shackled passenger in a van unequipped with seatbelts, then a jury could reasonably infer that Officer Doe consciously disregarded a significant risk to Plaintiff's safety. Thus, the Court permits Plaintiff's Eighth Amendment claim to proceed for further development of the record.

*First Amendment Retaliation*

The First Amendment to the U.S. Constitution prohibits prison officials from retaliating against prisoners because they have engaged in constitutionally protected speech. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). To adequately plead a First Amendment retaliation claim, an inmate must plausibly allege: (1) that he or she engaged in protected speech; (2) that a prison official took adverse action against him or her; and (3) that there was a causal connection between the protected speech and the adverse action. *Id*. For purposes of a First Amendment retaliation claim, adverse action is conduct which "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes v. Walker,* 239 F. 3d 489, 493 (2d Cir. 2001). To be actionable, the retaliatory conduct must be more than *de minimis*. *Davis v. Goord,* 320 F. 3d 346, 353 (2d Cir. 2003).

Plaintiff indicates that on November 14, 2020, Officer Doe verbally harassed him over a protracted period. It is further implied that this harassment was motivated by Plaintiff's report of Officer's Doe's reckless driving and the van crash. Because filing a grievance is protected speech, *Dolan*, 794 F.3d at 294, Plaintiff's pleading could satisfy the first element of a First Amendment retaliation claim. However, Officer Doe's alleged response to Plaintiff's protected speech—verbal

harassment—does not constitute an "adverse action" to satisfy the second element of a retaliation claim. *See Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) ("prisoners may be required to tolerate more than average citizens before a retaliatory action taken against them is considered adverse") (quoting *Davis*, 320 F.3d at 353); *see, e.g., Alicea v. Howell,* 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (correctional officer's statement to inmate that there are "no secrets in prison" and that he would "have to pay the consequences" for filing a grievance against the officer did not rise to the level of adverse action). Indeed, mere verbal abuse, no matter how vile and repugnant, is not actionable under § 1983. *See Davis,* 320 F.3d at 353 ("insulting or disrespectful comments directed at an inmate generally do not rise to" the level of adverse action); *Keesh v. Quick*, No. 19-CV-08942 (PMH), 2021 WL 639530, at *10 (S.D.N.Y. Feb. 18, 2021) (finding that § 1983 is not designed to rectify harassment or verbal abuse and such abuse does not rise to the level of an adverse action sufficient to state a First Amendment violation). Here, Williams alleges that Officer Doe followed him to his cell, called him an "asshole," and indicated that "this isn't going to end well." Such *de minimis* conduct is not adverse action. And because Plaintiff has not adequately pleaded a violation of his First Amendment rights relating to Officer Doe's alleged November 14, 2020 conduct, the Court dismisses that aspect of Plaintiff's complaint without prejudice.

**ORDERS**

The Court enters the following orders:

(1)    Plaintiff's case shall proceed on his Eighth Amendment deliberate indifference to safety claim against Officer Doe in his individual capacity.

(2)  Plaintiff's First Amendment retaliation claim against Officer Doe is DISMISSED without prejudice. If Plaintiff wishes to pursue this claim on the basis of additionally pleaded facts, he may file a second amended complaint on or before August 29, 2022.

(3)  All claims against the Connecticut Department of Correction are DISMISSED. The Clerk is ordered to terminate the Connecticut Department of Correction as a party to this case.

(4)  The Clerk cannot effectuate service on Officer Doe without that Defendant's full name and current work address. Plaintiff is directed to obtain this information and to file a notice containing the information with the Court on or before August 29, 2022**.** Once Officer Doe has been identified, the Court will order that he be served with a copy of the complaint. **Failure to identify Officer Doe by August 29, 2022, absent an extension of time within which to do so, will result in the dismissal of this case without prejudice.**

(5)  The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(6)  A separate scheduling order shall issue once Defendant Officer Doe is identified.

(7)  If the Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the Plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. **Failure to notify the Court of a new address may result in dismissal of this case.**

(8)     Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Local rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

SO ORDERED at Bridgeport, Connecticut, this 28th day of July 2022.

/s/ *Kari A Dooley*
Kari A. Dooley
United States District Judge