UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID WILLIAMS, <br> *Plaintiff*, | ) <br> ) <br> ) | No. 3:22-cv-00236 (KAD) |
| v. | ) <br> ) | |
| DEPARTMENT OF CORECTION, et al., <br> *Defendants*. | ) <br> ) | NOVEMBER 4, 2022 |

## INITIAL REVIEW ORDER

Kari A. Dooley, United States District Judge:

On February 10, 2022, Plaintiff David Williams ("Plaintiff"), a prisoner currently confined at Osborn Correctional Institution ("Osborn")[1] in Somers, Connecticut, brought a pro se civil action under 42 U.S.C. § 1983 against the Connecticut Department of Correction ("DOC") and one unnamed DOC correctional officer. *See* Compl., ECF No. 1 at 1, 44–45. Upon initial review, the Court permitted Plaintiff to proceed with an Eighth Amendment deliberate indifference claim against the unnamed correctional officer and dismissed all claims against the DOC. *See*, Initial Review Order ("IRO"), ECF No. 19 at 9–10. The Court also instructed Plaintiff to identify the unnamed correctional officer for the purpose of effectuating service and granted Plaintiff leave to file an amended complaint on or before August 29, 2022. *See id* at 10.

On August 30, 2022, Plaintiff filed an Amended Complaint that identifies the previously unnamed defendant as Correctional Officer Sullivan ("Officer Sullivan"), seeks to add the state of Connecticut as a defendant and alleges additional federal and state causes of action. *See* Am.

---

[1] Plaintiff's Amended Complaint, dated August 30, 2022, alleges that he is currently housed at MacDougall Correctional Institution. As of November 1, 2022, the Connecticut State Department of Correction website locates Plaintiff at Osborn.

Compl., ECF No. 20. For the following reasons, the Court will permit Plaintiff to proceed with the Eighth Amendment deliberate indifference claim against Officer Sullivan set forth in the Amended Complaint.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), this Court must review civil prisoner complaints against governmental actors and "dismiss… any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id*. This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

The Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted). Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual

2

enhancement,'" does not meet the facial plausibility standard. *Id*. (quoting *Twombly*, 550 U.S. at 557).

**Allegations**

On October 10, 2020, Plaintiff was transferred to the MacDougall Building of MacDougall-Walker Correctional Institution ("MWCI') to visit an eye doctor. *See* Am. Compl. at ¶ 17. Following his appointment, Plaintiff, along with other inmates, gathered for transport back to the Walker Building of MWCI. *See id.* at ¶ 18.

Officers shackled Plaintiff in leg chains and handcuffs before placing him in the first bench row of seats within a 2018 GMC Savana. *See id*. at ¶¶ 19–20. Because Plaintiff is relatively tall—standing 6'2''—his knees squeezed against a steel frame plexiglass divider, which separated inmates from the van's driver. *See id*. at ¶ 22. Had Plaintiff been seated in a rear bench seat, he would have had much more leg room. *See id*. at ¶ 23. The 2018 GMC Savana was equipped with seat belts, *see id*. at ¶ 21, but officers did not buckle Plaintiff prior to departure. *See id.* at ¶ 24. Plaintiff does not indicate whether he was permitted or able to buckle himself.

While driving Plaintiff to his housing unit, Officer Sullivan texted and played a gambling game on his cell phone. *See id*. at ¶¶ 25–26. Either during the journey, or upon arriving at the destination, Officer Sullivan placed the van in reverse while still texting on his cell phone. *See id.* at ¶ 27. While in reverse, Officer Sullivan "punched the gas," and inadvertently accelerated into a stationary pole. *Id*. at ¶¶ 27, 31. The substantial force of impact smashed Plaintiff's knees into the van's metal and plexiglass divider. *See id*. at ¶ 31–32. At the same time, Plaintiff's body was thrown backward and then forward into the same divider. *See id*. at ¶ 33. As a result of the accident,

3

the van's rear bumper was damaged, and Plaintiff felt immediate pain in his neck, back and legs. *See id*. at ¶¶ 30, 34.

Plaintiff immediately asked Officer Sullivan to be seen by a medical professional, but Officer Sullivan told Plaintiff to "shut his mouth about the accident." *Id*. at ¶¶ 35–36. Officer Sullivan followed this comment by offering to give Plaintiff free boxer shorts and tee shirts, which Plaintiff perceived as a threat. *See id*. at ¶ 37.

Following the accident, Plaintiff was escorted to a bullpen within the Walker building. *See id.* at ¶ 38. There, Plaintiff informed the supervising officer that he had just been in a car accident and needed medical attention. *See id*. at ¶ 39. But the supervising officer did not believe Plaintiff and did nothing to assist him. *See id*. at ¶ 40. Several hours later, Plaintiff caught the attention of a correctional officer who took his claims seriously, and Plaintiff was taken to the medical ward. *See id*. at ¶¶ 41–42. At an unspecified later date, Officer Sullivan verbally harassed Plaintiff in a common area. *See id*. at ¶ 43. As Plaintiff walked back to his cell, Officer Sullivan followed. *See id*. at ¶ 44. At Plaintiff's cell, Officer Sullivan threatened Plaintiff for reporting the vehicle accident and vowed that "this would not end well for him." *Id*. at ¶¶ 44–45.

As of the filing of the Amended Complaint, Plaintiff continues to suffer neck and back pain and his knees continue to swell. *See id*. at ¶¶ 46, 48. Plaintiff has been prescribed pain medication and muscle relaxers and has received multiple injections to address pain and swelling in his right knee. *See id*. at ¶¶ 47, 49. Plaintiff reports that he has been told that he needs an MRI and has requested for DOC to arrange one "from an outside hospital." *Id*. at ¶¶ 51–52.[2] Plaintiff construes

---

[2] Medical records attached to Plaintiff's initial Complaint show that DOC physicians have ordered X-ray imaging. *See* Compl. at 56, 78.

4

DOC's apparent refusal to provide an MRI as "retaliation" for his report of Officer Sullivan's misconduct. *Id*. at ¶¶ 55–56.

**Discussion**

Plaintiff's initial § 1983 claim was premised on the theory that Officer Sullivan was deliberately indifferent to Plaintiff's safety in violation of the Eighth Amendment when he recklessly operated the transport vehicle, which resulted in an accident that caused Plaintiff to suffer injuries. *See* Compl. at 8. The Amended Complaint expands the breadth of the Eighth Amendment claim to now include deliberate indifference to his medical needs for failure to render aid following the accident; a request for an injunctive order requiring "DOC to take the plaintiff to an outside provider for an MRI and an independent evaluation of the plaintiff's injuries, [and to] provide any treatment ordered by said provider"; claims against Officer Sullivan in his official capacity; a state law tort claim for negligence against the state; and, apparently, for the first time, a First Amendment claim premised on the theory that DOC's withholding of medical treatment was in retaliation for Plaintiff's reporting Officer Sullivan's misconduct.

The Court addresses each of these claims.

*Eighth Amendment Claim*

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. Amend. VIII. An inmate's Eighth Amendment claim against a prison official is comprised of distinct objective and subjective elements. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective element of an Eight Amendment claim requires an inmate to show that he or she was deprived of a basic human need. *See id.* at 834. The subjective element of an Eighth Amendment claim requires an inmate to show that a prison official acted with a

5

*conscious* disregard to a significant risk to his or her health or safety. *See id.* at 837 (emphasis added). This culpable mental state exceeds mere negligence and is akin to criminally reckless intent. *See id*. at 839–40.

In its initial review, the Court permitted Plaintiff to proceed with an Eighth Amendment claim on the theory that Officer Sullivan exhibited deliberate indifference to his safety by engaging in reckless driving while transporting him between facilities. *See* IRO at 8. While there are some differences between the facts Plaintiff alleged in the initial Complaint versus those he alleges now, the broad strokes of Plaintiff's Eighth Amendment deliberate indifference to safety claim remain the same. Plaintiff continues to adequately plead a claim that Officer Sullivan violated his Eighth Amendment rights by virtue of his reckless driving.

Plaintiff's Amended Complaint is also construed to include a claim that Officer Sullivan was deliberately indifferent to his medical needs by denying treatment to Plaintiff immediately following the accident. *See* Am. Compl. at ¶¶ 34–35. To adequately plead a deliberate indifference to medical needs claim, a plaintiff must allege: (1) an objectively "sufficiently serious" deprivation of medical care; and (2) subjective "deliberate indifference" on the part of the defendant who has deprived the plaintiff of medical care. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)*.* Here, Plaintiff alleges that he suffered pain in his neck, back and legs in the immediate aftermath of a car accident. This acute pain, even to a lay person, would have suggested the possibility of a spinal injury, which is a serious medical concern. *See Simon v. Paige*, No. 9:13-cv-3025-RMG, 2014 WL 2979460, at *2 (D.S.C. June 27, 2014) ("[D]rawing all inferences in favor of Plaintiff…even a lay person would recognize the need for a doctor's attention when a person complains of a neck injury sustained in a car accident.") Thus, Plaintiff has alleged a

6

sufficiently serious injury, in the immediate aftermath of a car accident, to satisfy the objective element of an Eighth Amendment deliberate indifference claim.

Plaintiff further alleges that he immediately informed Officer Sullivan of his need to see a medical professional. *See* Am. Compl. at ¶ 35. Officer Sullivan, however, allegedly told Plaintiff to "shut his mouth," and then attempted to bribe him not to report his injuries by offering him free boxer shorts and tee shirts. *Id.* at ¶¶ 36–37. Plaintiff does not allege that Officer Sullivan inadequately responded to his serious medical condition but rather that Officer Sullivan intentionally prevented him from receiving any medical treatment for a potentially serious medical condition. This allegation is sufficient to satisfy the subjective element of an Eighth Amendment deliberate indifference claim. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (Deliberate indifference may be "manifested…by prison guards in intentionally denying or delaying access to medical care."). Thus, Plaintiff's Eighth Amendment claim against Officer Sullivan arising out of his refusal to seek or provide aid in the immediate aftermath of the accident will also proceed.

To the extent that Plaintiff intended to plead any broader claim of deliberate indifference against Officer Sullivan, he has failed to do so. While Plaintiff appears to take issue with the adequacy of medical care that he has received from DOC in the months and years following the accident, *see* Am. Compl. at ¶¶ 46–56, these grievances implicate treatment decisions over which Officer Sullivan had no control. Without any apparent involvement in Plaintiff's ongoing medical treatment, Officer Sullivan cannot be held liable for its alleged inadequacy. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983" (internal quotation marks omitted)).

To the extent that Plaintiff seeks to plead a claim of deliberate indifference against the state of Connecticut—the only other defendant currently named in this action—his pleading fails for two reasons. First, as explained in the Court's first initial review order, the state of Connecticut is not a "person" against whom Plaintiff may bring a § 1983 claim. *See* IRO at 19; *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (reaffirming that a State is not a person within the meaning of § 1983). Second, in the Amended Complaint, Plaintiff simply alleges that the medical treatment provided by the state of Connecticut—through DOC—is, in his opinion, inadequate. *See* Am. Compl. at ¶¶ 46–56. This conclusory articulation of dissatisfaction with medical treatment does not adequately plead an Eight Amendment violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.")

*State Vehicular Tort Claim*

In the Amended Complaint, Plaintiff invokes 28 U.S.C. § 1367 as authority for the Court to exercise supplemental jurisdiction over a state tort claim against the state of Connecticut arising out of Officer Sullivan's allegedly negligent driving. *See* Am. Compl. at ¶¶ 8, 25–34.

Connecticut General Statute § 52-556, on which Plaintiff relies, provides:

> Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury.

Generally, § 52-556 serves as a waiver of the state's sovereign immunity and provides the state's consent to suit for claims arising under the circumstances identified. *See Babes v. Bennett*, 247 Conn. 256, 260 (1998). However, unanswered by the Connecticut Supreme Court is whether the

waiver of sovereign immunity extends to claims brought in federal court. Section 52-556 does not specify whether the state has consented to be sued in federal court. And "in the absence of a state's consent, a suit in federal court in which a state or one of its agencies or departments is named as the defendant for damages is proscribed by the Eleventh Amendment." *See Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Assn.,* 450 U.S. 147, 149 (1981); *Baltas v. Dones,* No. 3:22-CV-38 (MPS), 2022 WL 1239989, at *20 (D. Conn. Apr. 27, 2022). The Court finds the recent analysis by Judge Shea on this very issue persuasive.

> A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed…The court may not find an Eleventh Amendment waiver "unless the state has spoken in the 'most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Minotti v. Lensink*, 798 F.2d 607, 610 (2d Cir. 1986)…"Since '[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued,' there will be no waiver of immunity against federal suit unless the state specifies its intention to consent to suit in federal court." *Minotti*, 798 F.2d at 610.
>
> Here, section 52-556 contains no express language or any overwhelming implication from the statutory text that the State of Connecticut has waived its Eleventh Amendment immunity and thereby consents to be sued for damages under section 52-556 in federal court. Nor does any Connecticut Supreme Court decision clarify that the statute may be construed to constitute a waiver of the State's Eleventh Amendment immunity. *See Minotti*, 789 F.2d at 611 ("the silence of the legislature may be rectified by the voice of the state's highest court."). In fact, the Connecticut Supreme Court has directed that statutory waivers of sovereign immunity should be construed to afford the "least rather than the most change in sovereign immunity," *Babes v. Bennett*, 247 Conn. 256, 262 (1998), and the Court has previously afforded narrow construction to the scope of section 52-556's waiver of sovereign immunity in the absence [of] clear language. *See Hicks v. State*, 297 Conn. 798, 802–03 (2010).
>
> Thus, at present, it remains unclear as to whether Connecticut has waived its Eleventh Amendment immunity and thereby consents to suits for damages under section 52-556 in federal court.

*Baltas*, 2022 WL 1239989, at *20 (cleaned up). Here, because Plaintiff's claim against the state of Connecticut pursuant to § 52-556 raises a significant and unanswered question of state law, the Court declines to exercise supplemental jurisdiction over the claim pursuant to § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raises a novel or complex issue of State Law....").

*Request for Injunctive Relief*

In the Amended Complaint, Plaintiff seeks injunctive relief in the form of an order for DOC officials to provide him with specific medical treatment. To the extent this remedy might be available, it would need to flow from a verdict that identifiable prison officials were deliberately indifferent to his need for medical treatment—a claim that Plaintiff has not adequately pleaded. Thus, Plaintiff's request for injunctive relief is dismissed.

*First Amendment Retaliation Claim*

In the Amended Complaint, Plaintiff further alleges that DOC has retaliated against him for reporting Officer Sullivan's misconduct by refusing to provide requested medical treatment. *See* Am. Compl. at ¶¶ 51–56. A claim of this nature could, in theory, implicate a First Amendment violation by a particular DOC official in his or her individual capacity. *See Chimney v. Quiros*, No. 3:21-cv-00321 (JAM), 2021 WL 5281608, at *10 (D. Conn. Nov. 12, 2021) ("I find that for the purposes of initial review [plaintiff's] allegations that defendants denied [plaintiff] medical treatment in retaliation constitute adverse action.") But here, the only named Defendants are Officer Sullivan and the state of Connecticut. As discussed above, Officer Sullivan had no apparent involvement in Plaintiff's ongoing treatment, and, thus, cannot have retaliated against Plaintiff by withholding medical care. And the state of Connecticut is not a "person" against whom Plaintiff

10

may bring a § 1983 claim. *See Will*, 491 U.S. at 64. Thus, Plaintiff has not pleaded a viable First Amendment retaliation claim against any party to this action.³

Furthermore, Plaintiff's conclusory allegation that DOC has withheld appropriate medical treatment appears to be premised only on his opinion. But retaliation claims must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). Thus, even if a proper defendant were to be identified with respect to this claim, Plaintiff has failed to plausibly allege a retaliation claim with sufficient specificity.

*Official Capacity Claims Against Officer Sullivan*

In the Amended Complaint, Plaintiff purports to sue Officer Sullivan in his individual and official capacity. *See* Am. Compl. at ¶ 7. However, Officer Sullivan is not a "person" within the meaning of § 1983 to the extent that he acted in his official capacity and Plaintiff seeks monetary, rather than injunctive, relief. *See Will*, 491 U.S. at 71 n.10. Already in this Order, the Court has dismissed Plaintiff's request for injunctive relief. Indeed, § 1983 claims for money damages against state employees in their official capacity are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, Plaintiff's official capacity claims against Officer Sullivan are dismissed.

---

³ Liberally construed, Plaintiff's Amended Complaint could also be read as intending to bring a First Amendment retaliation claim against for the verbal abuse that Officer Sullivan allegedly inflicted upon Plaintiff in response to Plaintiff's report of his alleged misconduct. *See* Am. Compl. at ¶¶ 43–45. However, in its prior initial review order, the Court explained why this claim is not viable. *See* IRO at 8–9. And the Amended Complaint does not allege any new facts which would affect the Court's prior analysis of this claim.

**ORDERS**

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Plaintiff's Eighth Amendment deliberate indifference claim against Officer Sullivan shall proceed on the theory that Officer Sullivan violated Plaintiff's Eighth Amendment rights through reckless driving practices and by intentionally denying or delaying Plaintiff's access to medical care in the immediate aftermath of a car accident.

(2) Plaintiff's request for injunctive relief is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

(3) All claims against Officer Sullivan in his official capacity are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

(4) Any § 1983 claims which Plaintiff may have intended to bring against the state of Connecticut are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The state law tort claim against the state of Connecticut which is premised upon § 52-556 is dismissed insofar as the Court declines to exercise supplemental jurisdiction over the claim. Plaintiff is free to pursue the claim in the Superior Court.

(5) Any First Amendment retaliation claims which Plaintiff may have intended to bring are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (b)(2).

(6) The Clerk shall verify the current work address of Officer Sullivan with the Department of Correction Office of Legal Affairs and mail a copy of the Amended Complaint, this Order, and a waiver of service of process request packet to Officer Sullivan in his individual capacity at his confirmed address. On the **thirty-fifth (35th)** day after mailing, the Clerk shall report to the Court on the status of the request. If Officer Sullivan fails to return the waiver request,

the Clerk shall arrange for in-person service by the U.S. Marshals Service and Officer Sullivan shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(7)     The Clerk shall send a courtesy copy of the Amended Complaint and this Order to the Office of the Connecticut Attorney General in Hartford, Connecticut as well as the Department of Correction Office of Legal Affairs.

(8)     The Defendant shall file a response to the Amended Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If he chooses to file an answer, he shall admit or deny the allegations and respond to the claims recited above. He may also include any and all additional defenses permitted by the Federal Rules.

(9)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by June 3, 2023**.** Discovery requests shall not be filed with the Court.

(10)    All motions for summary judgment shall be filed by July 3, 2023.

(13)    If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. **Failure to do so may result in the dismissal of the case.** Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice and list all case numbers. It is not enough to just put the new address on a letter without indicating that it is a new address. Plaintiff should also notify the Defendants or the attorney for the Defendants of his new address.

(14)    Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court.

Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on the Defendant's attorney by regular mail.

(15) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of November 2022.

                                              *Kari A. Dooley*
                                              Kari A. Dooley
                                              United States District Judge